The decision of the court as to the claim of the Kemler Lumber Company is clearly right for the reason that it never did establish its mechanic's lien, as it failed to have the memorial thereof entered on the register in the registrar's office within the four months, as required by section 89 of the Torrens act and section 7 of the Mechanic's Lien law. Johnson did register a memorial of his lien on the register, as required by section 89 of the Torrens act and section 7 of the Mechanic's Lien law, and therefore established his mechanic's lien. This is recognized in the decision of the court, and there is absolutely no question about Johnson thus establishing his lien. But the court holds that Johnson lost his lien by not giving or having given notice of lis pendens after he began foreclosure proceedings with reference to his lien. In this holding I think the court erred. The principles involved in this decision are of the gravest and most important character and involve the consideration of nearly all the principal sections of the Torrens act. It will therefore be necessary to at least refer to those sections for consideration so as to be properly understood in this dissent.
It is not disputed that the Kemler Lumber Company filed suit to foreclose its supposed lien within the two years, as required by section 9 of the Mechanic's Lien law, and that it made Wise and Johnson and all other parties then *Page 495 
having any interest in the lots in question parties defendant to its bill. It is also unquestioned that Johnson in that foreclosure suit, after he was made a party defendant, filed his intervening petition within the two years aforesaid to foreclose his mechanic's lien, of which lien he had already given notice by having entered on the register in the registrar's office the proper memorial thereof, as required by the Torrens act. This was the only way in which he could foreclose his lien after the Kemler Lumber Company brought its suit, as only one suit can be maintained under the Mechanic's Lien law to foreclose the various liens for labor, materials, etc., furnished by the various parties. (Granquist v. Western Tube Co. 240 Ill. 132.) It must be admitted, then, that Johnson could not bring a new suit to foreclose his lien but did the only thing then left open to him to do, — intervene in the Kemler Lumber Company's suit to foreclose his lien. The failure of the Kemler Lumber Company to foreclose its lien, or to be able to do so, does not and will not militate against Johnson foreclosing his lien on his intervening petition.
Just at this time I desire to emphasize and make plain the real point of difference between the court's views and my views as to Johnson's lien. The court decides that he lost his lien because he and the Kemler Lumber Company failed to give notice of lis pendens as to the foreclosure suit. My views are, the lien being already established by the beginning of that suit in time, that he lost nothing as to his simple mechanic's lien by failing to give the notice, but is only penalized by that failure, under the Torrens act, by losing his costs made in court. All Johnson had to do to continue that simple lien in force was to bring his suit in time, which he did do, while the court decides he has to both bring his suit in time and also notify Naumann and all other subsequent purchasers that he had brought his suit in time by giving notice of lispendens through the registrar's office. Neither the Mechanic's Lien law nor the *Page 496 
Torrens act requires notice of lis pendens by Johnson in order to continue his simple lien already established and registered.
When notice of a mechanic's lien is recorded in the proper recorder's office within the four months, as provided by section 7 of the Lien law, all the holder of the lien has to do to continue in force his registered lien is to begin foreclosure proceedings within two years, as provided by section 9 of the act. By the express provisions of sections 89 and 90 of the Torrens act the same is true under that act. Section 89 in substance provides that when a mechanic's lien is properly registered in the registrar's office within the four months required by section 7 of the Mechanic's Lien law, proceedings may be had to enforce the lien as provided by the Mechanic's Lien law. By section 90 it is provided that no statutory or other lien shall be deemed to affect the title to registered land unless a memorial thereof is entered upon the register "as herein provided." That is the equivalent of saying that when it is so registered such registered lien does affect registered land. It is thus seen that there is no difference, so far, in foreclosing liens on registered land and unregistered land, as those two sections of the Torrens act are the only two sections specially bearing on mechanics' liens and the foreclosure of such liens.
Now let us see just what effect the two sections of the Torrens act relating to notice of lis pendens have in the foreclosure of mechanics' liens. Section 84 is the general section on lis pendens, and simply provides that no suit, bill or proceeding at law or in equity, for any purpose whatever, affecting registered land, or any estate or interest therein, shall be deemed to be lis pendens or notice to any person dealing with the same, until a proper certificate of the pendency of such suit, bill or proceeding shall be filed with the registrar and a memorial thereof entered by him upon the register of the last certificate of title to be affected. *Page 497 
There is absolutely no requirement in this section or anywhere else in the act that notice must be given to save or to continue in force any lien already properly registered in the registrar's office, but the court holds that very proposition and that Johnson lost his lien already registered by not giving such notice. Now, this holding of the court is shown to be error by considering section 66 of the Torrens act, which is the special section on lis pendens applicable to mechanics' liens and mortgages. That section expressly provides that all charges upon registered land, or any estate or interest therein and any rights thereunder, may be enforced as now allowed by law, and all laws with reference to the foreclosure and release and satisfaction of mortgages shall apply to mortgages upon registered lands, or any estate or interest therein, except "as herein provided," and except that until notice of the pendency of any suit to enforce or foreclose such charge is filed in the registrar's office and a memorial thereof entered on the register, the pendency of such suit shall not be notice to the registrar or any person dealing with the land or any charge thereon. This latter section was apparently overlooked by the court in its decision, and it is the section applicable to the foreclosure of mechanics' liens.
Note carefully just what effect failure to give notice of lis pendens
has and what the penalty is for failure to give such notice. Simply and plainly stated, it is that the pendency of such suit shall not be notice to the registrar or any person dealing with the land. Section 66 further provides that the pendency of such suit shall not be a charge on the registered land. What does that mean? Simply this: that the pendency of such suit, — that is, the costs made thereby, — shall not be a charge on the land. It does not mean what the court decides, — that the costs of the suit shall not be a charge on the land and in addition thereto the lien-holder shall lose his simple lien already registered. Every section of the Torrens act applicable to the case now in 301-32 *Page 498 
hand shows clearly and conclusively that the above is the sole effect and the sole penalty on Johnson for his failure to give notice oflis pendens or notice of the pendency of his foreclosure suit.
Section 54 of the Torrens act provides that a deed, mortgage, lease or other instrument purporting to convey, transfer, mortgage, lease, charge or otherwise deal with registered land, or any estate or interest or charge upon the same, other than a will, or a lease not exceeding five years where the land is in actual possession of the lessee or his assigns, when registered in the registrar's office, as required by the act, shall transfer, mortgage, lease, charge or deal with the land according to the purport and terms of the deed, mortgage, lease or other instrument so registered. Section 40 provides that the registered owner of any estate or interest in land brought under the act shall, except in case of fraud, hold the same subject only to such estate, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office and free from all others, etc. This means, also, that he holds the land subject to the registered mortgages, liens, charges and interests noted in such last certificate of title. Section 45 provides that whenever a memorial or notation has been entered as permitted by the act, the registrar shall carry the same forward upon all certificates of title until the same is canceled in some manner authorized by the act. This means that the same cannot be presumed by subsequent purchasers to be released or lost unless stated on the register, as provided by the act. Section 65 provides that a release, discharge or surrender of a charge or any part thereof, or of any part of the land charged, may be effected in the same way as provided in case of a transfer, — that is, by entering on the register, opposite the charge, a memorial of such release, etc. Sections 53 and 92 provide that the address of the person presenting any charge or lien or mortgage for registration shall be indorsed on the instrument so *Page 499 
presented, and that such address may be changed from time to time by the person giving the registrar notice of such change, and all notices to such person may be served on him at such address. This means that a registered owner must be dealt with as having a real registered interest or charge against the land, and that subsequent purchasers cannot presume he has no interest and for any reason treat him as having no interest unless the record shows that it has been canceled or released as provided by the act. It also means that such registered lienholder must stand ready at all times to answer notice served on him at such last address and to be ready to accept the amount of his lien as last registered and in full satisfaction thereof.
The basic principle of the Torrens system is the registration of the title to the land instead of registering, as under the old system, the evidence of such title. (34 Cyc. 598.) Any existing liens and incumbrances are noted upon the record and the certificate of title, and the holder acquires an indefeasible title to the property, free from all claims and incumbrances, except those noted on the record. The property is also subject to certain claims for taxes and other incumbrances which are not properly matters of record. (Ibid. 605.) Under the Illinois act, as under all Torrens laws, a title in fee that is once registered continues to be the title to the land until another title is registered that abrogates or supersedes it. When a lien or claim is registered under the act and is noted on the certificate of title, as Johnson's was in this case, it continues to be a claim or lien on the land and must be so regarded until it is shown on the record canceled or discharged as provided by the act, or until the claim or lien changes into another form of lien and is registered in its new and changed form. All parties, whether registered owners or other parties dealing with the land, are required to treat a claim or lien thus registered as an existing and valid claim or lien until canceled as required by the act. In other words, the basic principle *Page 500 
of the Torrens system is that the register and the certificate of title at all times show the complete title and the true title to the land, and that all claims and liens noted thereon are, in fact, claims and liens according to the purport of the memorials thereof entered on the register and certificate. Any other interpretation would lead to absurd results and make the act a pit-fall to registered owners and claimants, whom the law specially purports to protect. While the system professedly contemplates that those who deal with registered land shall not be required to search or inquire about public records of claims or liens that are not registered with the registrar or to make inquiry about parties who may have unregistered claims, still the act does require all such parties who deal with registered land to communicate with and deal with those parties who have their claims registered in the register in the registrar's office, and they cannot on any ground presume that such registered claims are discharged, abandoned or lost. Johnson's lien in this case was registered and entered on the certificate of title. His address was in the registrar's office, so that Naumann could easily communicate with him and pay off and discharge his lien or learn from him that it was canceled or abandoned. He could not presume Johnson had failed to bring his suit in foreclosure. The presumption under the act was, and still is, that his lien is in force. The simple bringing of the suit in the time required continued and extended his lien. Both the Torrens act and the Lien law so provide. The court holds that it is giving notice of such suit brought in the time required by section 9 of the Lien law that continues the lien already registered, and the court, therefore, holds against both the Torrens act and the Lien act.
The lien or claim of a mortgagee or holder of a lien changes in character a number of times during the process of foreclosure and obtaining title by deed from the master in chancery. At every change it requires more to be paid *Page 501 
to the owner of the mortgage or of the lien, and the title or interest acquired at each change, in contemplation of the Torrens act, is registered with the registrar. The first interest or charge registered by the owner is the mortgage or lien claim, and is what I refer to as the simple lien. The next charge or lien contemplated as being registered is notice of lis pendens, which adds to the charge of the simple lien the costs for bringing the suit up to the decree, as provided by section 66. The next interest to be registered in the registrar's office is the decree in foreclosure and order for sale, as provided by sections 80 and 85 of the act. The next charge or claim to be registered under the act is the master's certificate of sale, as provided by section 87, and the final registration in the course of obtaining title in foreclosure proceedings is the master's deed itself. Now, the basic principle under the Torrens act is that all subsequent purchasers are only bound in their dealings with registered lands by such title as is registered, and they are sure bound by such title as is registered in the register in the registrar's office. For instance, suppose Johnson in this case had completed his title in foreclosure proceedings and had obtained a master's deed but had only registered his title up to and including the decree in foreclosure. What would have been Naumann's title and rights if he had bought when the register showed Johnson had a decree in foreclosure and what would have been Johnson's rights? Johnson could not have the full fee simple title under his master's deed because he had neither registered the master's certificate of purchase nor the master's deed. He would simply have been entitled to be paid by Naumann the amount of the decree in foreclosure and legal interest thereon and all court costs up to the decree in foreclosure, and Naumann, on payment of the amount of the decree and legal interest and costs up to decree, would have been entitled to the full fee simple title, unincumbered by Johnson's costs made in the sale of the land and in the making of the deed, because that part of *Page 502 
his charge and claim had not been registered. That this is the principle of the Torrens act and the effect of giving lis pendens at any stage of the title is as clear as the noonday sun when it is properly viewed and considered. In other words, an owner of a mortgage or lien loses every claim, charge, interest or title in the registered land that he does not register or give notice of, including notice of lis pendens, and he loses no interest, charge, lien, claim or title that he does register and give proper notice of on the register in the registrar's office, including all charges saved by giving notice of lis pendens. So the decision in this case is in opposition to the very basic principle of the Torrens system, that the complete title is registered and noted on the certificate of title and that the registered title is all true and in force as registered.
Take the case of a plain mortgage registered in the registrar's office and upon which a suit is pending for foreclosure of the same but no notice of lis pendens has been given by the mortgagor. What is the effect of a failure to give notice of lis pendens? Plainly, simply and only, that a subsequent purchaser, after registry of the mortgage and before notice of lis pendens, takes the title free and clear of the costs of the suit on paying the debt and interest due on the mortgage. The mortgagor loses his court costs by failing to give notice of his pending suit but does not lose his mortgage lien. Let us carry this same example one step farther and suppose the mortgage on record in the registrar's office and that the register shows the debt secured by the mortgage has been or may be barred by the Statute of Limitations, and suppose, also, the mortgagee has a suit pending to foreclose the mortgage but has not given notice oflis pendens. Now, can the subsequent purchaser presume the debt is barred by the Statute of Limitations and absolutely disregard the rights of the mortgagee, or can the mortgagee come in and show that the debt was not so barred *Page 503 
but had been kept alive by binding agreement to extend the time or by payments? The answer is plain and obvious that the mortgagee will still lose his court costs but may effectually insist that his lien is still good, as it is registered and has never been barred or released or satisfied. Johnson, the lienholder, is just in that same position. His lien was registered. He brought his suit in time, which kept his lien alive and continued it by the provisions of section 9 of the Lien law and section 89 of the Torrens act, but he gave no notice of lis pendens. He therefore loses the court costs paid out by him but not his lien, which was registered and still alive. Naumann is legally bound to redeem from that lien by paying the amount of it and legal interest thereon. The court holds Naumann was justified in presuming, against the facts, that no suit had been brought by Johnson; that a registered lien is no lien on the registered title, against the basic principle of the system, and that it is satisfied or paid although the register does not show such payment or discharge as the Torrens act expressly provides for. The decision is against every provision of the Torrens act that is applicable to this case and is as inequitable as can be. It allows Wise, who was made a party defendant to the foreclosure suit, and who, as the registered owner in fee simple, bought all the lots for less than $200 and which are proven now to be worth $37,500, to sell them for $8500 in cash to Naumann and Deckert, subject to the trust deeds mentioned in the decision of the court, and it permits a subsequent purchaser to treat Johnson as having no valid claim or lien whatever when Johnson's claim was noted on the register and on the very certificate of title issued to Naumann by the registrar. I therefore dissent.
 *Page 425